UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EJIKE OKPA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:19-CV-2162-G |
| SELECT PORTFOLIO SERVICING, ) | |
| INC., ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the cross motions for summary judgment filed by the plaintiff, Ejike Okpa ("Okpa"), and the defendants, Select Portfolio Servicing, Inc. ("Select Portfolio") and Bank of New York Mellon ("BONY Mellon") (collectively "the defendants"). *See* Plaintiff's Motion for Summary Judgment ("Okpa's Motion for Summary Judgment") (docket entry 32); Defendants' Motion for Summary Judgment (docket entry 31). For the reasons set forth below, the Defendants' Motion for Summary Judgment is **GRANTED** and Okpa's Motion for Summary Judgment is **DENIED**.

### I. BACKGROUND

#### A. Factual Background

This suit arises out of a real property dispute concerning 14403 Overview Dr., Dallas, TX 75254 ("the Property"). Defendants' Motion ¶ 4. On April 10, 1995,

Jean Onuaguluchi ("the Borrower") obtained a mortgage loan ("the Loan") from Sunbelt National Mortgage Corporation ("Sunbelt") in the principal amount of $140,400.00, evidenced by a promissory note ("the Note"). *Id.* ¶ 3. "As security for the Note, Borrower executed a Deed of Trust ('Deed of Trust') in favor of Sunbelt," which encumbered the Property. *Id.* ¶ 4. BONY Mellon is the assignee for the Deed of Trust. *Id.* ¶ 5. Okpa, who was married to the Borrower, obtained title to the Property as a result of a Final Decree of Divorce, which was recorded in the real property records of Dallas County on July 9, 2008. Okpa's Motion ¶ 3.

"On or about December 3, 2013, the prior servicer of the Loan sent a letter to the Borrower informing her that the Loan was in default as of March 1, 2012, and that if the default was not cured, the Loan would be accelerated." *Id.* ¶ 4.[1] On January 10, 2014, the prior servicer alerted the Borrower that the default was not cured and that the full outstanding amount of the Loan was accelerated. *Id.* ¶ 5; *see also* Defendants' Response to Plaintiff's Motion for Summary Judgment ("Defendants' Response") (docket entry 37) ¶ 24.

The prior servicer subsequently sent several letters to the Borrower over the next few years. On March 22, 2014, the prior servicer sent a letter to the Borrower informing her, *inter alia*, that the interest rate on the Loan would remain the same,

---

[1] Neither party identifies the "prior servicer" by name or the relationship between the prior servicer and the defendants. The court assumes, however, that the defendants inherited the rights and responsibilities of the prior servicer.

that the Borrower's total monthly payments for the next year would consist of $1,720.93 and that the Borrower had a loan balance of $75,513.36. Defendants' Motion ¶ 9. Similarly, a March 23, 2015 letter from the prior servicer notified the Borrower of roughly the same terms, including a slight increase in her loan interest but a lower total loan balance. *Id.* ¶ 10. On February 17, 2016, the prior servicer "sent an Escrow: Taxes and Insurance Statement to Borrower, informing [the Borrower] that" her monthly principal, interest, and escrow payment would be $2,256.45. *Id.* ¶ 11. On March 22, 2016, the prior servicer sent another letter to the Borrower noting a slight increase in her interest rate, her total monthly payments for the following year, and stating her total loan balance. *Id.* ¶12. Finally, on December 27, 2016, the prior servicer sent another escrow letter to the Borrower, informing the Borrower that her total monthly principal, interest, and escrow payments would be $1,878.33. *Id.* ¶ 13.

B. Procedural History

Okpa filed his complaint in state court on August 30, 2019. Plaintiff's Original Petition, Application for Injunctive Relief, and Request for Disclosures ("Original Petition") (docket entry 1-1). On September 12, 2019, the defendants removed the action to this court. Defendants' Notice of Removal (docket entry 1). Select Portfolio filed its Motion for Summary Judgment on May 6, 2021. Okpa filed his Motion for Summary Judgment on May 10, 2021. Okpa responded on June 10,

2021. Plaintiff's Response to Defendant's Motion for Summary Judgment ("Okpa's Response") (docket entry 36). Select Portfolio also responded on June 11, 2021. Defendants' Response to Plaintiff's Motion for Summary Judgment (docket entry 37). Neither party filed a reply brief. Accordingly, the cross motions for summary judgment are ripe for decision.

## II. ANALYSIS

### A. Legal Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.[2] A fact is material if the governing substantive law identifies it has having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show

---

[2] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 291 U.S. 253, 288-89 (1986)). When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id*. However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue of material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353, F.3d at 405.

B. Application

The sole issue presented by the cross motions for summary judgment is whether the defendants are time-barred from foreclosing on the Property under Texas' statute of limitations regarding liens on real property.[3] Okpa answers this

---

[3] The defendants also initially argued that Okpa is "not the original mortgagor, but a purported assignee who is a stranger to the relevant contracts" and,

issue in the affirmative and requests (1) a declaratory judgment that the defendants' lien is void as a matter of law and (2) an injunction preventing the defendants from selling the Property. *See* Original Petition ¶¶ 21-23, 26-30. The defendants disagree, arguing that any acceleration was abandoned before the statute of limitations ran. Defendants' Motion for Summary Judgment ¶ 2.

Under Texas law, "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." V.T.C.A., CIV. PRAC. & REM. CODE § 16.035(a). "On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void." § 16.035(d). Typically, the date of accrual occurs on "the maturity date of the last note, obligation, or installment." § 16.035(e). But "[i]f a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated." *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App. – Houston [1st Dist.] 2012, no pet.). "If, under the terms of the note, the acceleration is optional at the election of the note holder, the action accrues only when the holder exercises its option to accelerate." *Id.* (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)). "While accrual is a legal

---

accordingly, lacked standing to bring this suit. *See* Defendants' Motion for Summary Judgment ¶ 1. However, it appears that the defendants have abandoned this argument.

question, whether a holder has accelerated a note is a fact question . . . ." *Holy Cross*, 44 S.W.3d at 568.

However, "acceleration can be abandoned by agreement or other action of the parties." *Khan*, 371 S.W.3d at 353 (citations omitted). "Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date."[4] *Id.* "When an acceleration is abandoned by conduct, the intent to abandon must be 'unequivocally manifested.'" *Sexton v. Deutsche Bank National Trust Company*, 731 Fed. App'x. 302, 305 (5th Cir. 2018) (quoting *Thompson v. Bank of America National Association*, 783 F.3d 1022, 1025 (5th Cir. 2015)). "And where, as here, the surrounding facts are undisputed, abandonment is a question of law." *Id.* at 305-06.

Okpa maintains – and the defendants do not meaningfully dispute – that the Loan was accelerated on January 10, 2014. Okpa's Motion for Summary Judgment ¶ 5; *see also* Appendix in Support of Plaintiff's Motion for Summary Judgment ("Okpa's APPX.") (docket entry 33) at 54.[5] Accordingly, the defendants had until January 10, 2018 to initiate foreclosure or abandon acceleration or their lien would

---

[4] That is, abandonment effectively resets the four-year statute of limitations deadline.

[5] The defendants assert that the acceleration occurred on February 11, 2013. *See* Defendants' Motion for Summary Judgment ¶ 20. However, the court cannot find, and the defendants do not point to, any evidentiary support for this assertion.

become void. The defendants argue that each of the communications to the Borrower in 2013, 2014, 2015, and 2016 amounted to an abandonment of the acceleration because each letter "request[ed] payment [from Borrower] of less than the full amount of the balance" remaining on the Loan, Defendants' Response ¶ 25, and that under Fifth Circuit precedent, "a request for payment of less than the entire accelerated balance [is] *per se* sufficient to unequivocally manifest the lender's intent to abandon acceleration." *Id*. ¶ 28. Okpa counters that such statements by lien-holders "must request payment of less than the full accelerated amount due *and* inform the borrower that if the default was not cured, that the loan might be accelerated in the future." Okpa's Response ¶ 13 (emphasis in original). Thus, the central dispute concerns whether abandonment necessarily requires a lien-holder to inform a borrower that failure to conform to the original terms of the loan will result in another acceleration.

The weight of Fifth Circuit precedent supports the defendants' position that a request by the lien-holder of less than the full amount of the loan is sufficient, without more, to demonstrate an unequivocal manifestation of intent to abandon the acceleration. In the Fifth Circuit's seminal case on abandonment, the court held that a lien-holder's statement which included both "the amount due under the original terms of the Note" and notice "that the bank would accelerate the maturity date of the loan if the [borrowers] failed to pay this amount" was an unequivocal

manifestation of intent to abandon. *Boren v. United States National Bank Association*, 807 F.3d 99, 106 (5th Cir. 2015). Okpa argues that the latter part of the lien-holder's statement was necessary to support the judgment in that case. The court disagrees. The sentence immediately preceding *Boren*'s holding provides vital context. There, the *Boren* court appears to embrace a more general rule: "A lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'" *Id.* (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. App'x. 677, 680 (5th Cir.) (per curiam) (alterations in original), *cert. denied* 577 U.S. 1008 (2015).

A series of non-binding or non-dispositive cases also support the conclusion that a statement by the lien-holder that it will accept payment under the original terms of the note is sufficient to demonstrate unequivocal intent to abandon the previous acceleration. In *Meachum v. Bank of New York Mellon Trust Company, National Association*, 636 Fed. App'x 210 (5th Cir. 2016) (per curiam), a lien-holder accelerated a borrower's loan and initiated foreclosure proceedings. *Id.* at 211-12. In 2008, during the pendency of the foreclosure proceedings, the lien-holder "sent a second notice of default for an amount less than the full balance of the loan." *Id.* at 212. It appears that the bank in *Meachum* continued to send similar letters over the next several years. *Id.* The Fifth Circuit began by interpreting *Boren* as holding that "[a] lender can abandon its earlier acceleration by 'requesting payment on less than

manifestation of intent to abandon. *Boren v. United States National Bank Association*, 807 F.3d 99, 106 (5th Cir. 2015). Okpa argues that the latter part of the lien-holder's statement was necessary to support the judgment in that case. The court disagrees. The sentence immediately preceding *Boren*'s holding provides vital context. There, the *Boren* court appears to embrace a more general rule: "A lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'" *Id.* (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. App'x. 677, 680 (5th Cir.) (per curiam) (alterations in original), *cert. denied* 577 U.S. 1008 (2015).

A series of non-binding or non-dispositive cases also support the conclusion that a statement by the lien-holder that it will accept payment under the original terms of the note is sufficient to demonstrate unequivocal intent to abandon the previous acceleration. In *Meachum v. Bank of New York Mellon Trust Company, National Association*, 636 Fed. App'x 210 (5th Cir. 2016) (per curiam), a lien-holder accelerated a borrower's loan and initiated foreclosure proceedings. *Id.* at 211-12. In 2008, during the pendency of the foreclosure proceedings, the lien-holder "sent a second notice of default for an amount less than the full balance of the loan." *Id.* at 212. It appears that the bank in *Meachum* continued to send similar letters over the next several years. *Id.* The Fifth Circuit began by interpreting *Boren* as holding that "[a] lender can abandon its earlier acceleration by 'requesting payment on less than

the full amount of the loan.'" *Id.* at 212. On this basis, the *Meachum* court concluded that "the 2008 notice of default sent to Meachum 'request[ed] payment on less than the full amount of the loan' and thus represented an abandonment of the 2006 acceleration." *Id.* at 213 (quoting *Boren*, 807 F.3d at 106) (alterations in original). Similarly, in *Nunnery v. Ocwen Loan Servicing, L.L.C.*, 641 Fed. App'x. 430 (5th Cir. 2016) (per curiam), the Fifth Circuit reiterated its prior holdings that a lien-holder "unilaterally abandons acceleration of a note 'by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms.'" *Id.* at 433 (quoting *Boren*, 807 F.3d at 105). True, the lien-holder in *Nunnery* sent the borrower a statement including language explicitly "un-accelerat[ing]" the loan in addition to requesting payment under the original terms. *Id.* However, the *Nunnery* court appeared to view that clause as unnecessary to its holding: after noting the general rule stated above, the court concluded that "[a]bandonment *is even clearer when, as here, it is express*: Ocwen's 2013 notice stated 'that acceleration of the Loan . . . has been abandoned, and the Loan has been un-accelerated.'" *Id.* (emphasis added). The implication, of course, is that acceleration can be abandoned despite the lack of "express" language to that end.[6]

---

[6] The Fifth Circuit reiterated this rule as recently as this year. See *Willbern v. Bayview Loan Servicing, L.L.C.*, 842 Fed. App'x. 865, 867 (5th Cir. 2021) ("Within the Fifth Circuit, notices seeking less than the total amount due after acceleration show a clear an unequivocal intent to abandon acceleration.") (citing

Finally, in *Martin v. Federal National Mortgage Association*, 814 F.3d 315, 319 (5th Cir. 2016), the Fifth Circuit confronted the slightly different issue whether a lien-holder who accepts payments after default – rather than after the lien-holder accelerated the note – has waived its right to later accelerate and foreclose. The court summarized previous case law on acceleration as follows: "the request for payment of less than the full obligation–after initially accelerating the entire obligation–was an unequivocal expression of the bank's intent to abandon or waive its initial acceleration." *Id.* at 318 (citing *Boren*, 807 F.3d at 106 and *Leonard*, 616 Fed. App'x. at 680). Although *Martin* explicitly distinguished its holding from cases in which the lien-holder accelerated the note, the court clearly interpreted the latter category of cases as standing for the proposition that "representing to the mortgagor that payment of less than the entire obligation will bring the loan current may amount to abandonment or waiver of the acceleration as a manifestation of 'actual intent to relinquish' it." *Id.* at 318-19 (quoting *Boren*, 807 F.3d at 105).[7]

The Fifth Circuit cases cited by Okpa are not contrary to this rule. Okpa argues, for example, that *Sexton*, 731 Fed. App'x. 302, stands for the proposition that "the Defendants' statement must request payment of less than the full accelerated

---

*Boren*, 807 F.3d at 105).

[7] These cases are in addition to *Leonard*, 616 Fed. App'x. 677 – favorably cited by *Boren* – which annunciated the rule that a lien-holder puts "the debtor on notice of its abandonment of acceleration by requesting payment on less than the full amount of the loan." *Id.* at 680.

amount due *and* inform the borrower that if the default was not cured, the loan might be accelerated in the future." Okpa's Response ¶ 13.  But *Sexton*, like *Boren* and *Nunnery*, held only that a statement by a lien-holder containing both clauses is *sufficient* to abandon acceleration, not that the latter clause is *necessary*.  Indeed, *Sexton* acknowledged the general rule that "[a] lender may abandon a prior acceleration 'by sending the [borrowers] account statements indicating the past due balance and by giving the [borrowers] the option to cure their default by paying the past due balance.'" 731 Fed. App'x. at 307.[8]  Accordingly, a lien-holder's statement to a borrower need only include a request for payment under the original terms of the loan in order to unequivocally manifest its intent to abandon a previous acceleration.

The statements sent to the Borrower by the prior servicer did precisely that.[9]  As noted above, the Loan was accelerated on January 10, 2014 and, under the 4-year statute of limitations, the defendants had until January 10, 2018 to abandon the acceleration or proceed with foreclosure.  The defendants abandoned acceleration on March 22, 2014, when the prior servicer informed Okpa of adjustments to the

---

[8] Okpa cites only one case directly to the contrary.  See *U.S. Bank National Association as Trustee for CSMC Mortgage-backed Trust 2007-3 v. Lamell*, 2021 WL 1133154 at *5 (S.D. Tex. Feb. 4, 2021), *report and recommendation adopted*, 2021 WL 1141247 (S.D. Tex. Mar. 24, 2021); Okpa's Response ¶ 14.  But *Lamell* is not binding on this court and cuts against the grain of Fifth Circuit guidance.

[9] As the parties did not brief the issue, the court assumes that the statements sent by the prior servicer to the Borrower reached Okpa, that Okpa was otherwise aware of the letters, or that the issue of whether Okpa received or was aware of the letters is irrelevant.

Borrower's interest rates and requested total monthly payments of $1,720.93, consistent with the original terms of the Loan and an amount less than the fully accelerated Loan amount. *See* Defendants' Motion for Summary Judgment ¶ 27; *id.* at Exhibit A-6. Indeed, the March 22, 2014 statement clarified to Okpa that the information contained therein related to "the terms of [Okpa's] Adjustable-Rate Mortgage" and that the Loan balance was $73,513.36, further signifying a return to the original terms of the Loan. *Id.* at Exhibit A-6. The statements by the defendants on March 23, 2015 and March 22, 2016 also satisfy the conditions for abandonment for the same reasons.[10] Accordingly, the defendants abandoned the acceleration within the 4-year statute of limitations because the defendants requested an amount less than the full balance of the Loan and contained information signifying a return to the original terms of the Loan.

## III. CONCLUSION

For the reasons set forth above, the defendants' Motion for Summary Judgment is **GRANTED** and Okpa's Motion for Summary Judgment is **DENIED**. Okpa's requests for declaratory judgment and injunctive relief are also **DENIED**.

---

[10] The court also notes that, under Texas law, the statute of limitations is tolled during the pendency of litigation. *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. Civ. App. – Corpus Christi 1978, writ ref'd n.r.e.) (where "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right"). Accordingly, the "clock" stopped on August 30, 2019, when Okpa initiated suit in state court.

**SO ORDERED**.

July 12, 2021.

                                                                                                                                                    */s/ A. Joe Fish*
                                                                                                                                                  A. JOE FISH
                                                                                                                                                  Senior United States District Judge